IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

GEORGE W. LIPSCOMB

:

    v.                 :      Civil Action No. DKC 09-3344

TECHNOLOGIES, SERVICES, &   :
INFORMATION, INC.

:

## MEMORANDUM OPINION

Presently pending and ready for resolution in this disability discrimination and retaliation case is a motion to dismiss, or in the alternative, for summary judgment filed by Defendant Technologies, Services, and Information, Inc. ("TSI"). (ECF No. 4). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion, which will be construed as a motion to dismiss, will be granted.

## I.   Background

From 1999 to March 31, 2008, Son's Quality Food Company ("Son's Quality") provided food services at Aberdeen Proving Ground ("APG") in Edgewood, Maryland. Son's Quality – and only Son's Quality – provided these services pursuant to a contract with the Maryland Department of Education Business Enterprise Program ("MDEBEP"). In March 2008, Son's Quality sold its MDEBEP subcontract to Defendant. Thus, on April 1, 2008,

Defendant became the sole food services provider at APG. Defendant, incorporated in 1997, is a Virginia corporation that provides food and custodial services to military bases.

Plaintiff George W. Lipscomb is a cook at APG. Son's Quality first hired him on August 29, 2005. When Defendant purchased the MDEBEP subcontract, Defendant also hired former Son's Quality employees, including Plaintiff, to continue working at APG. Consequently, Plaintiff today remains an employee of Defendant at APG.

The parties dispute the exact nature of the relationship between Son's Quality and Defendant. Defendant maintains that it is separate, distinct, and unaffiliated with Son's Quality. According to Defendant, "Neither is a parent of the other. There is no shared ownership or joint control or fiduciary responsibility between the companies. There are no shared employees. TSI operates out of its own offices." (ECF No. 5-1 ¶ 6).

On the other hand, Plaintiff believes that Defendant and Son's Quality are substantively the same company. First, Plaintiff emphasizes that both companies are "family" businesses represented by the same counsel. (ECF Nos. 13-6 ¶ 2; 13-8). He also observes that Defendant employed the same management and staff at the APG facility, which remained at the same address. (ECF No. 13-6 ¶¶ 7-9). Second, Plaintiff states that Son's

Quality notified employees in April 2008 that "the company was changing its name" to TSI, and union representatives instructed Son's Quality employees to complete TSI employment applications. (ECF No. 13-6 ¶¶ 4, 6). Third, union representatives reassured Son's Quality employees that "although the company's name was changing, it was still a family business." (ECF No. 13-6 ¶ 5).

On March 13, 2008, while still a Son's Quality employee, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), asserting disability discrimination and retaliation, occurring from December 2007 and March 12, 2008. In particular, Plaintiff contends Son's Quality created a hostile work environment, engaged in disparate treatment, and retaliated against him. Plaintiff's EEOC charge is directed solely against Son's Quality and does not mention Defendant. Plaintiff never filed an EEOC charge against Defendant.

On September 11, 2009, the EEOC issued Plaintiff a right to sue letter, and Plaintiff filed a two-count complaint in this court on December 14, 2009. In Count I, Plaintiff asserts that Defendant discriminated against him in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act ("ADA"). Plaintiff maintains that he has suffered from dyslexia, attention deficit disorder ("ADD"), and learning disabilities since childhood. After he discussed his disability

with his supervisors, they called him derogatory names including "dumb," "stupid," "retarded," "liar," and "fraud," questioned the "legitimacy of his disability," and accused him of having a "personality flaw." (ECF No. 1 ¶¶ 18-22). According to Plaintiff, his supervisors also critiqued and disciplined him more harshly than they did his coworkers. In Count II, Plaintiff alleges that Defendant retaliated against him for filing an EEOC complaint through heightened surveillance, harassment, criticism, and an unexplained salary reduction.

On December 17, 2009, Plaintiff attempted to serve Defendant by forwarding a copy of the complaint and summons, by certified mail and restricted delivery, to the address of Defendant's resident agent on file with Maryland State Department of Assessments and Taxation ("SDAT"). The Post Office sought unsuccessfully to deliver the complaint on December 22, 2009 and December 23, 2009, before returning the letter as unclaimed to Plaintiff's counsel on February 8, 2010. Plaintiff's counsel then used a private process server to serve Defendant's president and resident agent, Jun Y. Son, at his home on April 13, 2010. Defendant concedes that the resident agent's address on file with the SDAT at the time of service had not been updated to reflect Defendant's current address. (ECF No. 5, at 7 n.4).

On May 12, 2010, Defendant filed a motion to dismiss, or in the alternative, for summary judgment. (ECF No. 4). Defendant's motion seeks dismissal on three grounds: (1) insufficiency of service of process under Rule 12(b)(5); (2) lack of subject matter jurisdiction under Rule 12(b)(1); and (3) failure to state a claim upon which relief can be granted under Rule 12(b)(6). Plaintiff filed an opposition. (ECF No. 13). Defendant replied. (ECF No. 14).

## II. Sufficiency of Service of Process

### A. Standard of Review

Defendant has moved to dismiss for insufficient service of process under Rule 12(b)(5). "Once service has been contested, the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4." *O'Meara v. Waters,* 464 F.Supp.2d 474, 476 (D.Md. 2006). "Generally, when service of process gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally." *Id.* But the "plain requirements for the means of effecting service of process may not be ignored." *Id.* If the plaintiff has failed to comply with Rule 4, the court may dismiss the complaint or quash the service, thereby permitting the plaintiff to attempt properly to serve the defendant. *See Vorhees v. Fischer & Krecke,* 697 F.2d 574, 576 (4th Cir. 1983).

## B.   Analysis

Plaintiff's service of process is sufficient.   Defendant admits that the address it maintained for service of process with the SDAT was incorrect.   (ECF No. 5, at 7 n.4).   Defendant also does not contest that Plaintiff made two attempts to serve Defendant's resident agent by mail at the address on record with the SDAT, before serving the resident agent in person at his home.   (*See* ECF Nos. 13-10, 13-11, 13-12).   Defendant, however, maintains that because the Maryland Rules do not explicitly provide for personal service of process upon a corporation's resident agent at a private residence, Plaintiff should have effectuated substituted service of process upon the SDAT in accordance with Md. Rule 2-124(o).   Defendant is incorrect.

The requirements for service of process are set forth in Fed.R.Civ.P. 4(e)(1), which permits serving individuals pursuant to the state law of "the state where the district court is located or where service is made."   Rule 4(h) makes Rule 4(e)(1) applicable to service on corporations.   *See* Fed.R.Civ.P. 4(h)(1)(A).

In Maryland, service of process is governed in part by Md. Rule 2-124, which states, "Service is made upon a corporation . . . by serving its resident agent, president, secretary, or treasure."   Md. Rule 2-124(d).   The Rule also states:

> Service may be made upon a corporation . . .
> by serving two copies of the summons,
> complaint, and all other papers filed with
> it, together with the requisite fee, upon
> the [SDAT] if . . . (ii) the resident agent
> is dead or no longer at the address for
> service of process maintained with the
> [SDAT]; or (iii) two good faith attempts on
> separate days to serve the resident agent
> have failed.

Md. Rule 2-124(o).

Defendant incorrectly relies on *Brown v. American Institutes for Research*, 487 F.Supp.2d 613 (D.Md. 2007), to argue that personal service of a resident agent at a personal residence is insufficient. (ECF No. 5, at 7-8). In *Brown*, the plaintiff failed to serve the defendant's existing resident agent, who was available to receive service, because the plaintiff never contacted the SDAT. *Id.* at 614. Instead, the plaintiff attempted to serve the defendant's vice president by leaving copies of the summons and complaint at her home with a person of suitable age and discretion. *Id.* at 615. The court found service on the defendant's vice president ineffective because the plaintiff failed to serve defendant's resident agent, and service by leaving copies with a person of suitable age and discretion applies only to service of individuals, not corporate agents. *Id.* at 615-17 (citing Fed.R.Civ.P. 4(e)(2) and Md. Rule 1-121(a)(2)).

Here, Plaintiff's service of process upon Defendant was sufficient. First, nothing in the Maryland Rules expressly prohibits personal service of process on a resident agent. *See* Md. Rules 2-121(a), 2-124(d). Moreover, Md. Rule 2-124(o) permits, but does not mandate, substituted service of process on the SDAT. *See* Md. Rule 2-124(o) ("Service *may* be made upon a corporation") (emphasis added). Thus, after Plaintiff failed to effectuate service by mail, Plaintiff could have opted to serve Defendant by leaving copies with the SDAT, but was not required to do so. Second, unlike the *Brown* plaintiff who made no attempt to serve the resident agent and served the vice president by leaving copies with a person at her home, Plaintiff correctly identified Defendant's resident agent and served him in person. The *Brown* court specifically noted that under both the Federal and Maryland rules, "personal delivery to the resident agent of a corporation constitutes effective service of process." *Brown*, 487 F.Supp.2d at 617; *see also Mommaerts v. Hartford Life & Accident Ins. Co.*, 472 F.3d 967, 968 (7th Cir. 2007) (finding service effective because "service may occur anywhere a corporate officer (or agent authorized to accept process) may be found"). Because Plaintiff's service of process is sufficient here, the court will deny Defendant's motion to dismiss under Rule 12(b)(5).

## III. Lack of Subject Matter Jurisdiction

### A.    Standard of Review

Motions to dismiss for lack of subject matter jurisdiction are governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure.   The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court.   *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).   There are two types of challenges to subject matter jurisdiction, facial and factual:

> First, it may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. In that event, all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. Second, it may be contended that the jurisdictional allegations of the complaint were not true.  A trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations.

*Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (footnote omitted).   On a factual challenge, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it.   *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647.

> A trial court may consider evidence by
> affidavit, depositions or live testimony
> without converting the proceeding to one for
> summary judgment. *See Mims v. Kemp*, 516
> F.2d 21 (4th Cir.1975). Unlike the
> procedure in a 12(b)(6) motion where there
> is a presumption reserving the truth finding
> role to the ultimate factfinder, the court
> in a 12(b)(1) hearing weighs the evidence to
> determine its jurisdiction. This does not
> usually present a serious problem except in
> those cases where the jurisdictional facts
> are intertwined with the facts central to
> the merits of the dispute. It is the better
> view that in such cases the entire factual
> dispute is appropriately resolved only by a
> proceeding on the merits.

*Adams*, 697 F.2d at 1219. While the court does not "convert" the

matter to a summary judgment motion, it does apply similar

standards: "The district court should apply the standard

applicable to a motion for summary judgment, under which the

nonmoving party must set forth specific facts beyond the

pleadings to show that a genuine issue of material fact exists."

*Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

The court should grant the 12(b)(1) motion "only if the material

jurisdictional facts are not in dispute and the moving party is

entitled to prevail as a matter of law." *Id.*

**B. Analysis**

Defendant argues that Plaintiff's complaint should be

dismissed for lack of subject matter jurisdiction because

Plaintiff failed to exhaust his administrative remedies. In

particular, Defendant asserts that Plaintiff has never filed an EEOC charge against Defendant.[1]

1. **The Exhaustion Requirement**

The ADA prohibits discrimination and retaliation against qualified individuals on the basis of disability. *See* 42 U.S.C. §§ 12112, 12203(a) (2006). Because the ADA incorporated the procedural requirements of Title VII, a plaintiff must exhaust his administrative remedies as to those claims before filing a complaint in federal court. *See* 42 U.S.C. § 12117(a) (2006). The exhaustion requirement serves dual purposes: providing notice to the employer and promoting conciliation between the parties. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Importantly, a plaintiff's failure to exhaust administrative remedies deprives federal courts of subject matter jurisdiction over the claim. *See Talbot v. U.S. Foodservice, Inc.*, 191 F.Supp.2d 637, 638 (D.Md. 2002).

The scope of the plaintiff's right to file a federal lawsuit is determined by the contents of his EEOC charge. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002).

---

[1]    Defendant also argues that the filed charge did not allege any Title VII violation. Because Plaintiff's complaint does not sufficiently allege discrimination and retaliation under Title VII, and Plaintiff has "withdraw[n] any reference to Title VII claims in the Complaint," the court will only address the claims as they pertain to the ADA. (ECF No. 13, at 8 n.2).

"Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained" in a subsequent lawsuit. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). Thus, a claim will generally be barred if the EEOC charge alleges discrimination on one basis, such as disability, and the formal litigation claim alleges discrimination on a separate basis. *See Talbot*, 191 F.Supp.2d at 640-41 (granting summary judgment against an employee who alleged race discrimination in his EEOC charge but brought suit under both Title VII and the ADA). Furthermore, a plaintiff fails to exhaust his administrative remedies where his EEOC charges "reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko*, 429 F.3d at 506.

In his EEOC charge, Plaintiff asserts that Son's Quality discriminated and retaliated against him in violation of the ADA from December 2007 to March 12, 2008. Although Plaintiff acknowledges that Son's Quality, not Defendant, employed him before April 2008, Plaintiff nevertheless filed the present action only against Defendant. (ECF No. 13-2, at 10-11). Generally, federal courts lack subject matter jurisdiction where a plaintiff files suit against an employer without first naming

it in a prior requisite EEOC charge. *See Zhang v. Sci. & Tech. Corp.*, 332 F.Supp.2d 864, 867-68 (D.Md. 2004) (denying plaintiff's motion for leave to amend to add a party who had not been named in the plaintiff's EEOC charge and holding that plaintiff's failure to exhaust administrative remedies deprived federal courts of subject matter jurisdiction).

2. **The "Substantial Identity" Exception**

Although Plaintiff acknowledges that his EEOC complaint was directed solely at Son's Quality, he urges the court to find that he has satisfied the exhaustion requirement because a "substantial identity" exists between Son's Quality and Defendant. In the alternative, Plaintiff asks the court to excuse his failure to exhaust administrative remedies.

Ordinarily, a plaintiff's failure to name a party within an EEOC charge would prohibit suit against the party for failure to exhaust administrative remedies. *See Alvarado v. Bd. Of Trs. Of Montgomery Cmty. Coll.*, 848 F.2d 457, 458-59 (4th Cir. 1988) (explaining that the naming requirement "notifies the charged party of the asserted violation [and] brings the charged party before the EEOC and permits effectuation of [Title VII]'s primary goal, the securing of voluntary compliance with the law"). Some courts, however, recognize the "substantial identity" exception to the naming rule, whereby a plaintiff may

bring suit against a defendant unnamed in an EEOC charge.[2] *See,*
*e.g.*, *Sedlacek v. Hach*, 752 F.2d 333, 334-36 (8th Cir. 1985);
*Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980).
Although the Fourth Circuit has neither explicitly adopted nor
rejected the "substantial identity" exception, it has cited the
exception with approval in dicta. *See Alvarado*, 848 F.2d at 461
(4th Cir. 1988) (finding it unnecessary to apply the exception in
the case *sub judice*, but citing district court decisions within
the Fourth Circuit that have applied it); *E.E.O.C. v. Am. Nat'l*
*Bank*, 652 F.2d 1176, 1186 n.5 (4th Cir. 1981) (reasoning that
jurisdiction is proper "where it is clear that the defendant
through some relationship with the named respondent had notice
of the charges and participated in the conciliation process.").
To determine whether a substantial identity exists between two
entities, the court should consider: "(1) similarity of
interests between named and unnamed parties; (2) ability of the
plaintiff to ascertain the unnamed party at the time of the EEOC
charge; (3) notice of the EEOC charge by the unnamed party; and

---

[2]    Lipscomb does not argue that his claims against
Defendant were otherwise "reasonably related to the original
complaint [or were] . . . developed by reasonable investigation
[of that complaint]." *Jones v. Calvert Group, Ltd.*, 551 F.3d
297, 300 (4th Cir. 2009) (quotation marks omitted).

(4) prejudice."[3]  *Zhang*, 332 F.Supp.2d at 867 (citing *Thomas v. Bet Sound-Stage Rest./BrettCo, Inc.*, 61 F.Supp.2d 448, 457-58 (D.Md. 1999)).

At the outset, it must be noted that Plaintiff has submitted little useful evidence as to any of these factors. On a Rule 12(b)(1) motion, the court applies the summary judgment standard, under which "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768. Plaintiff, therefore, must submit affidavits containing "admissible evidence and be based on personal knowledge," and not merely rely on "self-serving opinions without objective corroboration." *Evans*, 80 F.3d at 962. Here, much of Plaintiff's affidavit is rife with inadmissible hearsay and conclusory statements. For example, Plaintiff's attempts to convey what allegedly Son's Quality posted and what union representatives told him are really efforts to introduce inadmissible hearsay. But even assuming

---

[3]  Some courts have considered additional factors. For instance, in *Baharadwaja v. O'Malley*, No. 04-3826, 2006 WL 2811257, at *7 (D.Md. Sept. 27, 2006), the court considered whether "the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party." There is no evidence that Defendant ever represented to Plaintiff that its relationship was to be through Son's Quality.

*arguendo* that statements in Plaintiff's declaration were admissible and true, Plaintiff nevertheless fails to show a substantial identity between Son's Quality and Defendant.

Plaintiff does not allege a similarity of interests between Son's Quality and Defendant, other than to maintain that both companies existed during the same relevant time, separately hired the same employees, and operated at APG. (ECF No. 13-2, at 11). Plaintiff does not challenge the affidavit of Defendant's president, which explained that Defendant was incorporated in 1997, that Son's Quality remains an existing and operating business, and that Defendant and Son's Quality are wholly distinct and separate entities. (ECF No. 5-1 ¶¶ 2, 5-6). In fact, Plaintiff concedes that he changed employers by acknowledging that he completed an employment application with TSI before beginning work for Defendant. (*See* ECF No. 13-6 ¶¶ 6-7). Moreover, Plaintiff does not challenge Defendant's explanation that it operates at APG because it had purchased the MDEBEP subcontract from Son's Quality. (*See* ECF No. 5-1 ¶ 4). In short, Plaintiff fails to show how the employment practices, decisions, and operations of Son's Quality and Defendant are sufficiently interrelated to justify a finding of similarity of interest.

In addition, while it is true that Plaintiff could not have ascertained Defendant's identity at the time he filed his EEOC

charge in March 2008, Plaintiff could have easily ascertained Defendant's identity once Defendant began to employ him in April 2008. Plaintiff could have then filed an amended EEOC charge alleging discrimination by Defendant, but Plaintiff did not do so. Thus, Plaintiff failed to show that he could not have ascertained Defendant's identity.

Finally, Plaintiff supplies no evidence that Defendant had notice of the EEOC charge against Son's Quality. Plaintiff also fails to show that Defendant participated in any EEOC investigation initiated by Plaintiff. In contrast, Defendant's president specifically avers that the company never participated in EEOC proceedings, never received actual notice of Plaintiff's initial EEOC filing, and never received a copy of the right to sue letter. (ECF No. 5-1 ¶¶ 9-11). Therefore, Defendant might be prejudiced if it were now required to defend against a discrimination lawsuit relating to allegations charged against a separate and distinct employer, arising from a time when Defendant was not Plaintiff's employer. Plaintiff, thus, has failed to show a substantial identity between Son's Quality and Defendant.

### 3. **"Successor-In-Interest Liability" Exception**

There is another avenue under which Defendant might be subject to liability: the "successor-in-liability" theory. Plaintiff essentially alleges theory, albeit not by name. The

Fourth Circuit has not addressed the successor-in-interest exception. Many other circuits, however, adhere to the successor-in-interest liability exception to the naming rule to determine when a corporate successor is liable for the discriminatory practices of its predecessor. *See, e.g.,* *Brzozowski v. Corr. Physician Servs., Inc.*, 360 F.3d 173, 177-78 (3[d] Cir. 2004); *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 750 (5th Cir. 1996); *Wheeler v. Snyder Buck, Inc.*, 794 F.2d 1228, 1236 (7th Cir. 1986); *Trujillo v. Longhorn Mfg. Co.*, 694 F.2d 221, 224 (10th Cir. 1982). Under the "successor-in-interest liability" test, a court may consider:

> 1) whether the successor company had notice of the charge, 2) the ability of the predecessor to provide relief, 3) whether there has been a substantial continuity of business operations, 4) whether the new employer uses the same plant, 5) whether he uses the same or substantially the same work force, 6) whether he uses the same or substantially the same supervisory personnel, 7) whether the same jobs exist under substantially the same working conditions, 8) whether he uses the same machinery, equipment and methods of production, and 9) whether he produces the same product.

*EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1094 (6th Cir. 1974). The test essentially looks to whether a successor had notice, whether a predecessor had the ability to provide relief, and the continuity of the business. Under contracts law, a corporation that purchases the assets of

another is generally not liable for the liabilities of the selling corporation. *See United States v. Carolina Transformer Co.*, 978 F.2d 832, 838 (4th Cir. 1992). Employment discrimination cases, however, adopted the approach of labor law to successor liability, which does not require a merger or transfer of assets. *Cobb v. Contract Transp.*, 452 F.3d 543, 554-56 (6th Cir. 2006). Thus, while the existence of a merger or a transfer of assets is a factor to be considered in determining whether an entity is a successor-in-interest, it is not a precondition to establishing successor liability. *Id.* at 554. In addition, the labor law concept of successor liability requires a court to balance the interests of the defendant-employer, the interests of the plaintiff-employee, and the goals of federal policy before imposing successor liability. *Id.* at 554-555.

Defendant may be a "successor-in-interest" to Son's Quality. As to the notice issue, lack of timely knowledge of a pending EEOC investigation does not *per se* bar successor liability. *See Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1237 (7th Cir. 1986). Moreover, Plaintiff filed his EEOC charge on March 18, 2008, while Defendant was negotiating with Son's Quality over the purchase of the MDEBEP subcontract. (ECF No. 5-3, at 1, ECF No. 5-1 ¶ 4). With some due diligence, Defendant would have been able to ascertain that Plaintiff had filed an

EEOC charge and Son's Quality was being investigated by the EEOC. *See EEOC v. 786 South LLC*, 693 F.Supp.2d 792, 795 (W.D.Tenn. 2010) (holding that "constructive notice may suffice under the successor liability doctrine, at least where the relevant charges have been filed with the EEOC").

As to the ability of the predecessor to provide relief, Defendant provides uncontested testimony that Son's Quality remains an independent entity. (ECF No. 5-1 ¶¶ 5-6). Defendant has emphatically stated that it has not merged with Son's Quality. (ECF No. 5-1 ¶¶ 5-6). There is, however, no evidence as to the ability of Son's Quality to provide relief, nor is there any documentation relating to Defendant's purchase of the MDEBEP subcontract. Furthermore, to the extent that injunctive relief is appropriate, it is axiomatic that the current, rather than the former, employer would be the appropriate party.

Plaintiff and Defendant essentially agree as to the remaining factors. There has been a substantial continuity of business operations because Defendant took over Son's Quality's food services contract at APG. (ECF No. 5-1 ¶ 4). Defendant hired all of Son's Quality's former employees at APG to continue working there, which would include all of Son's Quality's former supervisory personnel. (ECF No. 5-1 ¶¶ 7-8). There is no indication that the working conditions have changed, nor that Defendant uses different machinery, equipment, and methods of

production from Son's Quality. Defendant continues to produce food at APG, just as Son's Quality had done. (ECF No. 5-1 ¶ 4). The majority of factors, therefore, appear to favor a finding that Defendant is the successor-in-interest to Son's Quality.

Imposing successor liability also involves the equitable task of balancing Plaintiff's interests combined with the federal policy condemning disability discrimination, against Defendant's interest. Another court faced with the challenge has commented,

> The statutory mandate of informal settlement and conciliation is not served by requiring an aggrieved person to charge each new successor company. Such a requirement might encourage evasion through corporate transfers. Even in the case of bona fide transfers of ownership, the delays which would be involved in refiling charges might be substantial and result in prejudice to the discriminatee. Furthermore, serious questions would be presented as to whether a charge filed against a successor would be barred by the statute of limitations.

*MacMillan*, 503 F.2d at 1093. Such concerns are valid here because Plaintiff might be time-barred from seeking redress from Son's Quality, and discriminatory practices and retaliation that occurred under Son's Quality's ownership may continue to occur now. *See* 42 U.S.C. § 12117 (requiring discrimination under the ADA be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred, and requiring that an action asserting ADA claims be brought within ninety days of a

complainant's receipt of a right to sue letter); *Beall v. Abbott Labs.*, 130 F.3d 614, 620 (4th Cir. 1997), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ("Incidents outside of the statutory window are time-barred.").

While cases exist where the imposition of liability on a successor corporation would be unduly harsh, this does not appear to be such a case. Defendant, a corporation capable of ascertaining the existence of outstanding EEOC complaints against its predecessor, failed to do so. Plaintiff, a layperson of little business acumen, assumed that Son's Quality was merely changing its name, confounded by the fact that Defendant retained the same employees and supervisory personnel as Son's Quality and continued to operate at the same location. (ECF No. 13-6 ¶¶ 4, 8). Added to the ADA's purpose of eliminating disability discrimination, it does not appear that imposing liability on the Defendant as a successor corporation would work an unfair hardship. Defendant could have acquired notice of the EEOC complaint prior to purchasing the MDEBEP subcontract at APG with some due diligence and inquiry. In this case, "the equities . . . favor successor liability because it is the successor who has benefited from the discriminatory employment practices of its predecessor." *MacMillan*, 503 F.2d at 1092. Therefore, it would not be inequitable to impose

liability on Defendant as a successor-in-interest to Son's Quality.

When liability is based on successor liability, a plaintiff need not name all defendants in his EEOC charge. *See Williams v. Greendolf, Inc.*, 735 F.Supp. 137, 141 (S.D.N.Y. 1990) (holding that plaintiff's failure to name individual corporate officer in his EEOC charge did not deprive federal court of subject matter jurisdiction because liability is based on successor liability); *cf. EEOC v. Thurston Motor Lines, Inc.*, 124 F.R.D. 110, 113-15 (M.D.N.C. 1989) (granting defendant's motion to compel against a successor corporation even though defendant was not named in the EEOC charge). Thus, Defendant has failed to establish as a matter of law that Plaintiff's failure to name it in his EEOC charge deprives the court of subject matter jurisdiction.

4. **The Retaliation Claim**

In a footnote, Defendant asserts that Plaintiff failed to exhaust administrative remedies as to the retaliation claim because he never filed an EEOC charge alleging retaliation by Defendant. (ECF No. 5, at 9 n.6). As discussed above, because Defendant is a successor-in-interest to Son's Quality, Plaintiff's failure to name Defendant in his EEOC charge does not deprive the court of jurisdiction. Defendant also argues that the retaliation alleged by Plaintiff in the complaint "is

23

not a continuation of the retaliation [Plaintiff] alleged in his [EEOC] charge and is not reasonably related to nor grows out of the discrimination complained of to the EEOC." (ECF No. 5, at 9 n.6). The court disagrees.

The scope of an ADA action is not strictly limited by the scope of the preceding administrative charge of discrimination; rather the suit is "confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981). In *Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992), the Fourth Circuit held that a plaintiff may raise a retaliation claim for the first time in federal court. The Fourth Circuit clarified that the scope of a plaintiff's lawsuit "may extend to any kind of discrimination like or related to allegations contained in the [EEOC] charge and growing out of such allegations." *Id.* at 590 (internal citations and quotations omitted). An additional EEOC charge is unnecessary because "[h]aving once been retaliated against for filing an administrative charge, the plaintiff will naturally be gun shy about inviting further retaliation by filing a second charge complaining about the first retaliation." *Id.* (internal citations and quotations omitted). In *Jones v. Calvert*, 551 F.3d 297, 302 (4th Cir. 2009), the Fourth Circuit excused a plaintiff's failure to exhaust administrative remedies because

her complaint alleged a continuation of the retaliation set forth in her EEOC charge. Echoing its *Nealon* reasoning, the Fourth Circuit explained that it would be futile to require plaintiffs to file additional EEOC charges because they are understandably afraid to incur further retaliation, especially where the prior conciliation attempt had been unsuccessful. *Id.* at 304. Thus, "those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent" lawsuit. *Id.* at 300.

It would appear that the retaliation set forth in Plaintiff's complaint was reasonably related to the allegations included in the EEOC charge. In his EEOC charge, Plaintiff stated that he complained about harassment by his supervisor. (ECF No. 5-3, at 3). He further reported, "I believe I was discriminated against with respect to harassment and discipline because of my disability and in retaliation for engaging in protected activity in violation of the Americans with Disabilities Act of 1990." (ECF No. 5-3, at 3). In his complaint, Plaintiff alleges: "Since his EEOC filing, [Plaintiff] has been subjected to daily harassment and surveillance by Defendant and its agents. Defendant constantly criticizes [Plaintiff]'s performance. Defendant has also

reduced [Plaintiff]'s pay without explanation." (ECF No. 1 ¶¶ 46-48).

In both Plaintiff's EEOC charge and complaint, he alleges retaliation in the forms of harassment and discipline. The retaliation in Plaintiff's complaint is "like or related" to allegations in his EEOC charge and grew out of those allegations. *Nealon*, 958 F.2d at 590. Moreover, the retaliation Plaintiff now suffers is a continuation of the retaliation in his EEOC charge. Thus, it would be futile to require Plaintiff to invite further retaliation by filing an additional EEOC charge. Because Plaintiff's complaint alleges a continuation of retaliation reasonably related to Plaintiff's EEOC charge, the court may excuse Plaintiff's failure to exhaust administrative remedies. Accordingly, Defendant's motion to dismiss for lack of subject matter jurisdiction will be denied.

## IV. Failure to State a Claim

### A.   Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. See *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513, (2002), which requires a "short and plain statement of the claim

showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

The court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

**B. Analysis**

The court construes Plaintiff's complaint as stating claims for retaliation and ADA discrimination based on hostile work environment and disparate treatment. Because Defendant does not challenge the sufficiency of Plaintiff's retaliation claim, the court will not address it here.[4] Defendant contends that Plaintiff's ADA discrimination claim must fail because Plaintiff has not alleged facts showing him to be disabled under the ADA. The court agrees.

---

[4] The court notes that for Plaintiff to succeed on his retaliation claim, he will have to show: (1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) there was a causal connection between the protected activity and the adverse employment action. *See Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 443 (4th Cir. 1998). The plaintiff's burden in this regard is "not onerous," and requires only that he prove each element by a preponderance of the evidence. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the plaintiff makes such a showing, the burden shifts to the employer to offer a non-discriminatory basis for the adverse employment action. *See Matvia v. Bald Head Island Mgmt., Inc.,* 259 F.3d 261, 271 (4th Cir. 2001). The employee then has the opportunity to prove that the asserted reason is pretextual. *Id.*

Plaintiff fails to allege hostile work environment and disparate treatment. To establish a hostile work environment claim, Plaintiff must allege: (1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer. *Fox v. Gen. Motors Corp.,* 247 F.3d 169, 177 (4th Cir. 2001). To establish a disparate treatment claim, Plaintiff must allege: (1) he is a member of a protected class; (2) he has satisfactory job performance; (3) he was subjected to adverse employment action; and (4) similarly situated employees outside his class received more favorable treatment. *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). As will be fully discussed below, Plaintiff does not allege he is disabled under the ADA. Because Plaintiff fails to show he is a qualified individual with a disability or a member of a protected class, his hostile work environment and disparate treatment claims fail.

The court may determine whether Plaintiff is disabled within the meaning of the ADA as a matter of law. *See Heiko v. Colombo Savs. Bank*, 434 F.3d 249, 254 (4th Cir. 2006). With respect to an individual, the ADA defines "disability" as: "(A)

a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Because Plaintiff seems to allege that he qualifies as disabled under all three definitions, the court will examine them in turn.

    1.  **Substantial Limitation**

To establish disability within the meaning of subsection (A), the Plaintiff must allege that ADD, dyslexia, and learning disabilities qualify as "physical or mental impairment[s]" that "substantially limit" at least one of his "major life activities." 42 U.S.C. § 12102(1)(A). That is, the existence of impairments without showings of substantial limitation to major life activities would not qualify Plaintiff as disabled. *See Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 194-95 (2002), *superseded by statute*, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553; *Heiko*, 434 F.3d at 254.

Although the ADA does not define "major life activities," the Fourth Circuit interprets them to be "activities that are of central importance to daily life" and "that the average person in the general population can perform with little or no difficulty. *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 274 (4th Cir. 2004). The EEOC provides a non-exhaustive list of major life activities, including "functions such as caring for

oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Plaintiff asserts that he is disabled within the meaning of the ADA because he suffers from ADD, dyslexia, and learning disabilities. (ECF No. 1 ¶ 33). ADD, dyslexia, and learning disabilities have been recognized as impairments. *See* 29 C.F.R. § 1630.2(h)(2) (physical or mental impairments include "mental or psychological disorder, such as . . . specific learning disabilities"); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 506-09 (7th Cir. 1998) (recognizing that ADD qualifies as an impairment but refusing to find that the plaintiff was disabled under the ADA because her ADD did not substantially limit her ability to work, speak, and learn); *Fleetwood v. Harford Sys. Inc.*, 380 F.Supp.2d 688, 697 (D.Md. 2005) ("The ADA regulations specifically include dyslexia, a learning disability, as an impairment"). For Plaintiff's impairments to qualify as disabilities under the ADA, however, Plaintiff must show that they restricted his ability to perform a major life function in comparison to most people. *See Price v. Nat'l Bd. of Med. Exam'rs*, 966 F.Supp. 419, 427-28 (S.D.W.Va. 1997) (holding that the plaintiffs, medical students, do not have disabilities because their ADHD and learning disabilities did not substantially limit their ability to learn in comparison with

most people).  Here, Plaintiff merely states that he has ADD, dyslexia, and learning disabilities, but alleges no facts showing how any of these conditions substantially restricts any major life activities such as learning or working.  Therefore, even viewing the facts in the light most favorable to Plaintiff, he has failed to demonstrate that he is disabled within the definition of § 12102(1)(A).

2.  **Record of Disability**

Plaintiff likewise fails to establish disability within the meaning of subsection (B).  42 U.S.C. § 12102(1)(B).  Plaintiff contends that he has suffered from dyslexia, ADD, and learning disabilities since childhood.  (ECF No. 1 ¶¶ 15, 30). Accordingly, Plaintiff must show that he "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." *Foore v. Richmond*, 6 F. App'x 148, 153 (4th Cir. 2001) (quoting 29 C.F.R. § 1630.2(k)).  The record of disability standard is satisfied only if Plaintiff actually suffered a physical or mental impairment that substantially limits a major life activity.  *See Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 513 (3d Cir. 2001) ("A plaintiff attempting to prove the existence of a 'record' of disability still must demonstrate that the recorded impairment is a 'disability' within the meaning of the ADA."); *Foore*, 6 F.App'x at 153 (finding no

record of disability because plaintiff failed to prove that his impairment substantially limits a major life activity).

Plaintiff states that he has suffered from ADD, dyslexia, and learning disabilities since he was a child. Even accepting this as true, Plaintiff nevertheless fails to allege a record of disability because he does not claim that these impairments substantially limited any major life activities. Therefore, Plaintiff has failed to satisfy a record of disability under § 12102(1)(B).

3. **Regarded as Disabled by Decision-Makers**

Finally, to establish disability within the meaning of subsection (C), the Plaintiff must allege that Defendant "regarded" him "as having such an impairment." 42 U.S.C. § 12102(1)(C). Plaintiff contends that he was regarded by Defendant's supervisors as having ADD, dyslexia, and learning disabilities. (*See* ECF No. 1 ¶ 16). Plaintiff may be regarded as having a disability if Defendant mistakenly believed that he either has a physical impairment that substantially limits one or more major life activities, or that an actual, nonlimiting impairment substantially limits one or more of his major life activities. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999), *superseded by statute*, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553. "In both cases, it is necessary that [the employer] entertain misperceptions about the

individual – it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.*

Plaintiff fails to allege that Defendant regarded him as disabled. According to Plaintiff, after he "discussed his disability with his supervisors," he was "subjected to derogatory names related to his disability." (ECF No. 1 ¶¶ 16-17). Even assuming that Defendant was in fact aware of Plaintiff's ADD, dyslexia, and learning disabilities, Plaintiff's complaint indicates that Defendant did not regard him as disabled. In particular, Plaintiff states that Defendant's managers called him a "liar" and "fraud," "questioned the legitimacy of his disability," and accused him of having a "personality flaw." (ECF No. 1 ¶¶ 21-22). These allegations reveal that Defendant did not believe that Plaintiff was disabled. Thus, Defendant could not have mistakenly believed that Plaintiff was suffering from a substantially limiting impairment that he did not actually have, nor could Defendant have mistakenly believed that Plaintiff had an impairment that was in actuality, not limiting. Because Defendant did not regard him as disabled, Plaintiff fails to allege he is disabled under § 12102(1)(C). As Plaintiff fails to allege facts showing that he is disabled within the meaning

of the ADA, the court must accordingly dismiss Count I of Plaintiff's complaint for failure to state a claim under Rule 12(b)(6).

## V.   Conclusion

For the foregoing reasons, Defendant's motion, construed as a motion to dismiss, will be granted in part, denied in part. Plaintiff has twenty-one days to replead facts that would show a substantial impairment of at least one major life activity and a record of a disability.  A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge